UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

| | |
|---|---|
| NATHAN WALKER,<br><br>   Plaintiff<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>   Defendant. | Case No. 3:23-cv-00220<br><br>Judge: _____<br><br>Magistrate: _____<br><br>(JURY TRIAL REQUESTED) |

## PLAINTIFF'S COMPLAINT & JURY DEMAND

COMES NOW Plaintiff, NATHAN WALKER, and files this Complaint and Jury Demand, and would respectfully show the following:

## PARTIES

1. NATHAN WALKER ("Mr. Walker") is a citizen and resident of the State of Louisiana.

2. Defendant Union Pacific Railroad Company ("Defendant") is a domestic limited partnership that regularly does business in a systematic and continuous manner in the Middle District of Louisiana. It may be served by service upon its registered agent: **C T Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.**

## JURISDICTION AND VENUE

3. This action arises under the Federal Employers' Liability Act ("FELA") (45 U.S.C. § 51 et seq.) and under the whistleblower protection provisions of the Federal Railroad Safety Act, 49 U.S.C. § 20109 and as implemented by 29 CFR Part 1982. This action arises from the injuries

sustained and retaliation suffered by Mr. Walker while employed by Union Pacific and while engaged in interstate commerce.

4. Mr. Walker sues for damages in excess of $75,000. This Court has jurisdiction over Plaintiff's claims pursuant to 49 U.S.C. § 20109 and 29 CFR Part 1982, which permit Plaintiff to remove his claim from the Department of Labor to an appropriate United States District Court if the Secretary of Labor has not issued a final decision within 210 days. Additionally, the Federal Railroad Safety Act (49 U.S.C. § 20109) states, "FRSA promotes safety in railroad operations and reduces railroad-related accidents by protecting employees from retaliation for engaging in protected activities including reporting alleged violations of federal law relating to railroad safety or security and reporting work-related injuries or hazardous safety or security conditions." Under 49 U.S.C. § 20109(d), "if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury."

5. Venue is proper pursuant to 28 U.S.C. Section 1391(c) and 45 U.S.C.S. § 56, as Defendant is organized under the laws of the State of Louisiana and has regular and systematic contacts in the Parishes situated in the Middle District of Louisiana.

6. Mr. Walker submitted his complaint with OSHA on August 17, 2023. OSHA has not made any findings. As a result, Plaintiff has invoked this Court's jurisdiction.

## FACTUAL BACKGROUND

7. This case is brought under the Federal Railroad Safety Act (the "FRSA"). This suit is

necessary to collect a legal debt and damages due and owing Mr. Walker due to Defendant's retaliatory and malicious conduct in violation of the Federal Railroad Safety Act.

8. Mr. Walker is employed as a Conductor for Defendant. On March 19, 2022, Mr. Walker and Pat Ezernack were working in Defendant's Shreveport yard. While on-the-job, Mr. Walker and Mr. Ezernack heard gunshots aimed approximately thirty (30) yards from where they were located (the "Incident"). Photographs of the railroad's "derail" sign Mr. Walker was working near show a bullet hole, confirming that at least one bullet was exchanged in the area.

9. Prior to the Incident, Mr. Walker had reported the dangerousness of the area. In fact, Mr. Walker had previously been shot at in the exact same location. When Mr. Walker heard the gunshots on March 19, 2022, he believed he was being shot at again. Following the Incident, Mr. Walker reported to the railroad that he had been shot at while working. Specifically, Mr. Walker called his Yard Master, Wayne Haughton over the radio and advised that he and Mr. Ezernack were being shot at while in the yard. Mr. Walker also told Yardmaster Haughton that he refused to continue his shift under the circumstances. In response, Haughton told Mr. Walker that he would report it further within Union Pacific – meaning, Haughton assured Mr. Walker that his complaints would be shared with other Union Pacific personnel. In addition to immediately reporting the incident to Yardmaster Haughton on March 19, 2022, Mr. Walker also reported the Incident on Union Pacific's "safety hotline".

10. On or about March 25, 2022, Mr. Walker contacted Defendant's Employee Assistance Program (EAP). Mr. Walker reported to EAP that he was experiencing severe anxiety due to the work-related incident. Through the EAP, Mr. Walker has received counseling for his work-related Post-Traumatic Stress Disorder (PTSD) and other mental health problems that arose because of the Incident. According to Defendant's letter dated May 24, 2022, Mr. Walker's request for leave

qualified under the Family & Medical Leave Act (FMLA), and Mr. Walker's FMLA leave period was from March 25, 2022 through April 30, 2022. Also according to the letter, the remainder of Mr. Walker's requested leave (May 1, 2022 through June 23, 2022) was authorized under a Medical Leave of Absence (MLOA). Union Pacific's EAP referred Mr. Walker to Jerry Franklin, MA, LPC for psychotherapy

11. On March 30, 2022, Mr. Walker initially presented to Mr. Franklin, MA, LPC to begin treatment. Mr. Franklin noted that Mr. Walker presented anxious and showed a depressed affect and mood. Also noted was that Mr. Walker complained of "flashbacks" and recalled "a stressful event of a threatening nature while on the job, where, after sunset, noises sounding like gunshots rang out."

12. On April 20, 2022, Mr. Walker was diagnosed with PTSD. Because of the Incident, Mr. Walker experienced difficulties sleeping and eating. Mr. Walker also developed severe anxiety and still lives in constant fear. It was further noted that Mr. Walker also suffers anxiety and nervousness when in noisy environments and crowded places. To date, Mr. Walker continues to receive psychological treatment. Following Mr. Walker's FMLA leave, but while still on a MLOA, on May 18, 2022, Jerry Franklin released Mr. Walker back to work. Similarly, Mr. Walker was again released to return to work on June 19, 2022 and on July 24, 2022. Defendant did not allow Mr. Walker to return to work.

13. Mr. Walker engaged in protected activity Under 49 U.S.C. § 20109(a) and (b) – in particular here, Mr. Walker reported to Defendant Union Pacific, in good faith, the dangerousness of his workplace after he was shot at. Additionally, Mr. Walker refused to continue working immediately after he was confronted with an imminent hazardous safety or security condition. Furthermore, Mr. Walker notified Defendant of his work-related psychological injuries that

resulted from the Incident on March 19, 2022. On May 16, 2022, following these protected activities, Mr. Walker received a termination letter.

14. In the railroad's attempt to circumvent liability for its retaliatory acts, on or about May 31, 2022, Mr. Walker was notified by his union, SMART that Defendant had retracted its termination. Despite this performative retraction, Defendant continuously refused to allow Mr. Walker to return to work at the railroad. In essence, Defendant's retaliation continued even after Defendant retracted its termination of Mr. Walker. Despite the retraction, Defendant continuously refused to schedule Mr. Walker for work.

15. On August 17, 2022, Mr. Walker filed a complaint with the Occupational Safety and Health Administration (OSHA) complaining of Defendant's violations of the Federal Railroad Safety Act. Following receipt of Mr. Walker's OSHA complaint, on October 19, 2022, Defendant notified Mr. Walker that he was allowed to return to work. On or around November 7, 2022 – months after wrongfully terminating Mr. Walker for his protected activity under the FRSA – Defendant permitted Mr. Walker to return to work.

### FIRST CAUSE OF ACTION—RETALIATION AND WRONGFUL TERMINATION UNDER THE FRSA

16. The FRSA protects railroad employees from retaliation for engaging in protected activities including reporting alleged violations of federal law relating to railroad safety or security and reporting work-related injuries or hazardous safety or security conditions.

17. Based on the above-described reports, Mr. Walker engaged in protected activity under the Federal Railroad Safety Act. Indeed, Defendant unlawfully retaliated against Walker for: (1) reporting the hazardous safety or security condition (*see* 20109(b)(1)(A)); (2) refusing to work when confronted with an imminent hazardous safety or security condition (*see* 20109(b)(1)(B)); and (3) reporting his psychological work-related injury or illness (*see* 20109(a)(4)).

18.     Following these protected acts, Defendant terminated Mr. Walker. Put bluntly, Defendant wrongfully fired Walker for reporting a serious safety concern and refusing to perform a dangerous task. Mr. Walker's reports and refusal to engage in dangerous work were clearly a "contributing factor" in the decision to take adverse action against him. In sum, Defendant took adverse action against Mr. Walker shortly after he engaged in protected activity by reporting safety concerns.

## SECOND CAUSE OF ACTION – NEGLIGENCE UNDER FELA

19.     At all times material to this cause of action, Defendant was a common carrier by railroad engaged in interstate commerce and Mr. Walker was employed by Defendant in furtherance of those activities.

20.     Mr. Walker avers that at the time of his injuries, he was an able-bodied and psychologically healthy railroad worker and that as a direct cause of Defendant's negligence under the Federal Employers' Liability Act ("FELA") (45 U.S.C. § 51 *et seq.*) on March 19, 2022, Mr. Walker sustained serious psychological injuries for which he demands full recovery.

21.     Mr. Walker further avers that Defendant, through its employees, agents, servants, and employees negligently and carelessly failed to provide him with a reasonably safe place to work in violation of the provisions of the FELA, thereby causing and/or contributing to the aforementioned injuries, in whole or in part. More specifically, Defendant's negligence includes:

   a. failure to provide Mr. Walker with a reasonably safe place to work;
   b. failing to secure the workplace area;
   c. failure to provide safe working conditions where Mr. Walker was performing his duties in the manner required by Union Pacific;
   d. failure to warn Mr. Walker of unsafe workplace conditions of which it knew, or in the exercise of reasonable care, should have known;
   e. failure to provide Mr. Walker with sufficient and proper assistance;
   f. failure to establish and follow proper safety procedures;
   g. failure to properly instruct, supervise, and train; and
   h. failure to exercise due care and caution commensurate with the surrounding circumstances.

   As a result of Defendant's negligence under FELA, Mr. Walker suffered serious

psychological injuries.

## DAMAGES

22. As a result of Defendant's conduct, Mr. Walker has suffered and will continue to suffer financial hardship, and the permanent and irreversible damage to his professional reputation as a result of Defendant's conduct.

23. Mr. Walker has suffered a significant loss of earnings and wage-earning capacity.

24. Mr. Walker also seek punitive damages because Defendant knew that it was unlawful to retaliate in violation of 49 U.S.C. § 20109, yet chose to terminate and retaliate against Walker for the protected acts in this complaint.

25. Mr. Walker would additionally say and show that he is entitled to recovery of pre-judgment interest in accordance with law and equity as part of his damages herein, and Mr. Walker here and now specifically sues for recovery of pre-judgment interest from the date Defendant terminated Walker until the date of the judgment herein, as provided by law and equity, under the applicable provisions of the laws of the State of Louisiana and the United States of America.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Walker requests an award of all remedies available under law, including, but not limited to:

1. Physical pain and mental anguish in the past and future;
2. Payment of compensatory damages (including back pay with interest and compensation of special damages sustained as a result of the retaliation);
3. Medical expenses in the past and future;
4. Loss of enjoyment of life in the past and future;
5. Litigation Costs;
6. Expert Witness Fees;
7. Attorney's Fees;
8. Punitive Damages;
9. Prejudgment Interest; and
10. Any other applicable remedies under the law.

Respectfully submitted,

**KELLY & TOWNSEND**
/s/Keenan Kelly
Keenan K. Kelly
State Bar No. 22477
137 St. Denis Street
Post Office Box 756
Natchitoches, Louisiana
Email:  keenan@keltownlaw.com
(318) 352-2353
Fax:  (318) 352-8918
(318) 352-0036

**DOYLE DENNIS LLP**

MICHAEL PATRICK DOYLE (*Pro hac Vice Pending*)
Texas State Bar No. 06095650
3401 Allen Parkway
Suite 100
Houston, Texas 77019
Phone: 713.571.1146
Fax:  713.571.1148
service@doylelawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**JURY DEMAND**

Mr. Walker hereby demands a trial by jury, a right enshrined in the Constitutions of the United States of America and the State of Louisiana and preserved by the sacrifices of many. The necessary jury fee has been paid.

MICHAEL PATRICK DOYLE